**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **CELESTIN MONGA,** | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Case No.: PWG-16-2000** |
| | * | |
| **A.B.S. MOVING & STORAGE, INC.,** | | |
| *et al.*, | * | |
| | * | |
| **Defendant.** | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION**

In 2014, Plaintiff Celestin Monga relocated to Vienna, Austria for a temporary post with the United Nations Industrial Development Organization (UNIDO).   Compl. ¶ 1, ECF No. 2. After Monga left the country, he retained the services of Defendant A.B.S. Moving & Storage, Inc. ("A.B.S.") to move his belongings from his home in Gaithersburg, Maryland to Baltimore, where an international shipping company would pick the items up for shipment and delivery to Monga in Austria.   *Id.* ¶ 2.   Monga alleges that A.B.S. took advantage of his absence by demanding additional money before releasing his belongings to an international shipping company and also damaged and/or lost some of the items.   *Id.* ¶ 3.   Monga filed suit in the Circuit Court for Montgomery County, Maryland, alleging damages based on state-law claims. *Id.* ¶¶ 41–96.   Defendants removed the case to this Court.   Notice of Removal ¶ 2, ECF No. 1. Monga then filed a Motion to Remand, Pl.'s Mot., ECF No. 19, and the Defendants filed a Motion to Dismiss, Defs.' Opp'n & Mot., ECF No. 20.   The Motion to Remand is fully briefed,

Pl.'s Mot.; Defs.' Opp'n & Mot.; Pl.'s Reply, ECF No. 21, but the Motion to Dismiss is only

partially briefed, *see* Pl.'s Reply 1 (declining to file an Opposition to the Motion); Defs.' Sur-

Reply 3–4, ECF No. 23-2 (urging Court to grant the Motion as unopposed).   But for reasons

explained below the line, I will rule on both Motions.[1]   No hearing is necessary. Loc. R. 105.6

(D. Md.).   Because some of Monga's claims are completely preempted by federal law, I will

deny his Motion to Remand.   But because I must reframe completely preempted state-law claims

as a claims brought under their federal analogue and because some aspects of Monga's claims

are not preempted, I will also deny Defendants' Motion to Dismiss.

---

[1]      In this case, as in all of my cases, I issued a Pre-Motion-Conference Letter, which requires parties to request permission before filing any substantive or discovery motion in a case. ECF No. 11.  This practice promotes the "just, speedy, and inexpensive" resolution of cases, Fed. R. Civ. P. 1, by allowing the Court, where possible, to secure stipulations that obviate the need for briefing or to narrow the scope of the issues that do require briefing.  In compliance with the Pre-Motion-Conference Letter, Monga requested permission to file a motion to remand.  ECF No. 15.  Without first seeking permission, Defendants filed a Motion to Dismiss.  ECF No. 12. Accordingly, I struck the Motion and treated it as a pre-motion-conference request. *See* ECF No. 14.

On a pre-motion conference call held on August 16, 2016, I ordered the Parties to simultaneously brief both motions.  ECF No. 17.  Monga filed his Motion to Remand, Pl's Mot., in response to which Defendants filed an Opposition along with a Motion to Dismiss, Defs.' Opp'n & Mot.  Monga filed a Reply in further support of his Motion, but declined to respond to the Motion to Dismiss, incorrectly asserting that the Defendants lacked permission to file the Motion.  Pl.'s Reply 1.  Defendants filed a Sur-Reply in which they drew Monga's attention to my Order directing simultaneous briefing of the two Motions.   Defs.' Sur-Reply 3–4. Defendants urge me to grant the Motion to Dismiss as unopposed should I find that the Court possesses subject-matter jurisdiction over the case. *Id.* at 4.

Mistakes happen.   But I depend on clear communication from parties to ensure that mistakes do not jeopardize the efficient resolution of the matters before the Court.   Rhetorical thrusts and parries embedded in briefing provide inadequate notice for me to effectively manage the case.  Plaintiff's counsel neither requested permission to file a standalone motion to strike or, after Defendants filed their Sur-Reply, an untimely opposition.   And at no time did either party contact the Court to request a telephone conference to address the matter.   Instead, nearly four months passed while I presumed that two ripe motions awaited disposition.   I will not treat the Motion to Dismiss as unopposed, but because additional briefing at this juncture would undercut the purpose of holding a pre-motion conference and setting a briefing schedule, I will resolve both Motions on the information that is currently before me.

**Background**

In November 2014, Monga accepted a position with UNIDO and began organizing his relocation to Austria. Compl. ¶ 14. The following month, Monga contacted A.B.S. to "obtain an estimate of the costs to pack and move the contents of his household . . . to an A.B.S. storage facility, to then be picked up by another carrier for shipment to Vienna, Austria." *Id.* ¶ 15. Defendant Avi Sabban, an A.B.S. employee, provided a written estimate of $1,720.00 plus a $200 monthly storage fee. *Id.* ¶¶ 16, 18. Monga intended to store the items for no more than thirty days while he arranged international shipment of the items to Austria. *Id.* ¶ 19. A.B.S. began packing and moving the items on December 15, 2014 and completed the job the next day. *Id.* ¶ 20. Shortly after the move, Monga called Sabban, attempting to secure an inventory of the items packed and loaded, and Sabban informed him that the final cost of the move had exceeded the estimate by $264.53. *See id.* ¶ 21. Monga paid the requested amount. *Id.* ¶ 25. On January 15, 2015, A.B.S. requested an additional $2,887.50, which another A.B.S. employee, Defendant Natalie Smith, later explained included a previously undisclosed "pickup fee of $1987.50 plus $900.00 for storage" that the company would require Monga to pay before she would "discuss . . . whom you would like to have your household items released to." *Id.* ¶¶ 26, 29 (quoting Email from Natalie Smith, to Celestin Monga (Jan. 22, 2015, 7:55 P.M.), Compl. Ex. 4, ECF No. 2-4). Around the same time, Monga hired Allied International ("Allied") to retrieve the household goods from A.B.S. and ship them to Austria. *Id.* ¶ 33. An Allied representative contacted A.B.S., which indicated that it would not release Monga's belongings for international shipment until it received the additional $2,877.50 and a notarized letter authorizing the release. *Id.* ¶¶ 33–34. When Allied sought confirmation of these details on Monga's behalf, A.B.S. requested an additional $140.00 loading fee. *Id.* ¶ 36. Monga paid the additional $2,887.50 on

February 12, 2015.  *Id.* ¶ 32.  After additional difficulties securing release of the items, Allied successfully obtained Monga's belongings on March 3, 2015 and documented lost and damaged items.  *Id.* ¶¶ 39–40.

### Monga's Motion to Remand

A party may move to remand a case removed to federal court based on a lack of subject-matter jurisdiction.  28 U.S.C. § 1447(c).  Federal courts possess federal-question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  They also possess original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce."  28 U.S.C. § 1337(a).  Ordinarily, a case only "aris[es] under" federal law if the federal issue appears on the face of a well-pleaded complaint.  *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).[2]  Accordingly, a defense that raises a federal issue cannot serve as the basis for federal jurisdiction.  *Mottley*, 211 U.S. at 153.  But a complaint that raises only state-law claims, presents a federal question where "a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Defendants assert that the Carmack Amendment, 49 U.S.C. § 14706, completely preempts Monga's claims.  Defs.' Opp'n & Mot. 10–12.  The Carmack Amendment provides a federal cause of action to recover damages from carriers for "actual loss or injury to property" during interstate transportation.  *See* 49 U.S.C. 14706(a)(1).  Among other types of transportation, the Carmack Amendment applies to

---

[2] The well-pleaded complaint rule applies "regardless of whether jurisdiction is alleged under  28 U.S.C. § 1331 or § 1337."  *Va. Int'l Terminals v. Va. Elec. & Power Co.*, 21 F. Supp. 3d 599, 604 (E.D. Va. 2014).

transportation by motor carrier and the procurement of that transportation to the
extent that . . . property . . . [is] transported by motor carrier between a place in—
(A) a State and a place in another State; (B) a State and another place in the same
State through another State; (C) the United States and a place in a territory or
possession of the United States to the extent the transportation is in the United
States; (D) the United States and another place in the United States through a
foreign country to the extent the transportation is in the United States; or (E) the
United States and a place in a foreign country to the extent the transportation is in
the United States[.]"

*Id.* § 13501(1).

Defendants are correct that the statute completely preempts state-law claims against

carriers for goods lost during interstate transportation. *Adams Express Co. v. Croninger*, 226

U.S. 491, 505–06 (1913) ("Almost every detail of the subject [of carrier liability for property

damage or loss during interstate transportation] is covered so completely [by the Carmack

Amendment] that there can be no rational doubt but that Congress intended to take possession of

the subject, and supersede all state regulation with reference to it."); *Ward v. Allied Van Lines,

Inc.*, 231 F.3d 135 (4th Cir. 2000) ("Congress enacted the Carmack Amendment 'to create a

national scheme of carrier liability for goods damaged or lost during interstate shipment under a

valid bill of lading.' The Carmack Amendment preempts a shipper's state and common law

claims against a carrier for loss or damage to goods during shipment." (quoting *Shaw v. Link

Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993))); *Richter v. N. Am. Van Lines, Inc.*, 110

F. Supp. 2d 406 (D. Md. 2000) ("[T]he Carmack Amendment preempts any causes of action for

fraud, breach of contract, or breach of Maryland's Consumer Protection Act.").

But Monga contends that the Carmack Amendment does not apply to A.B.S.'s conduct

because the moving company only transported his belongings within Maryland-state lines and

because UNIDO contracted with Allied, an entirely different company from A.B.S., to ship the

items from Baltimore to Austria months after A.B.S. moved the goods pursuant to a separate

contract with Monga.  Pl.'s Mot. 3–4.   Defendants respond that intrastate legs of foreign shipments are subject to the Carmack Amendment where the intrastate leg is a "continuation of foreign commerce."   Defs.' Opp'n & Mot. 3–5 (quoting *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 700 (11th Cir. 1986)).   And because Monga always intended his goods to be shipped to Austria, Defendants argue that A.B.S.'s intrastate transportation is covered by the Carmack Amendment.

Monga reads *Reider v. Thompson*, 339 U.S. 113 (1950) to stand for the proposition that the Carmack Amendment covers the intrastate leg of a shipment that contains both intrastate and interstate components if both legs are "part of a single transaction," meaning a single contract governs the entire shipment or contractual privity unites the intra- and interstate legs.  Pl.'s Mot. 3–4.  *Reider* addressed whether or not the Carmack Amendment applies to exports or only imports.   339 U.S. at 117.   The cargo in that case traveled by ship from Buenos Aires to New Orleans before being transported by rail to Boston.  *Id.* at 115.   The Court held that the Carmack Amendment applied to the shipment because the domestic leg involved interstate transportation. *Id.* at 117.   The Court discussed privity of contract in the context of determining whether the domestic portion of the shipment could be analyzed apart from the international segment and did not address whether and under what circumstances an intrastate leg of a shipment is covered by the Carmack Amendment.  *Id.*  Accordingly, *Reider* does not resolve the pending matter.

More relevant to the issue at hand, this Court has previously held that the Carmack Amendment applies to the intrastate portion of international shipments where the "intention formed prior to shipment was for the goods to be carried by a continuous or unified movement to a final destination beyond the port of discharge."   *Bongam Inv. Corp. v. Pioneer Shipping Logistics, Inc.*, No. CCB-09-965, 2009 WL 1766782, at *2 (D. Md. June 9, 2009) (citing *Sompo*

*Japan Ins. Co. of Am. v. Union Pac. R. Co. R.R. Co.*, 456 F.3d 54, 63–68 (2d Cir. 2006), *abrogated on other grounds in Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89 (2010); *Swift Textiles*, 799 F.2d at 699–701).  This test has its roots in *United States v. Erie R.R. Co.*, 280 U.S. 98 (1929), which held in the context of different federal regulation of interstate transportation that the intra- or interstate "nature of [a] shipment is . . . determined by the essential character of the commerce" based upon the shipper's "continuing intent."   *Id.* at 101–02.

It is clear from the Complaint that Monga intended all along for his household goods to be shipped to him in Austria.  Compl. ¶ 15 ("Celestin Monga contacted Defendant A.B.S. Moving & Storage to obtain an estimate of the costs to pack and move the contents of his household . . . to an A.B.S. Moving & Storage facility, *to then be picked up by another carrier for shipment to Vienna, Austria*." (emphasis added)).  But Monga argues that the intra- and interstate portions of the shipment lacked continuity or a "unifying element" because (1) the A.B.S. contract did not reference the subsequent interstate shipment; (2) the two legs involved different contracting parties (Monga for the A.B.S. contract and UNIDO for the Allied contract); and (3) the three-month interlude between storage in Baltimore and subsequent shipment to Austria severed any theoretical continuity between the two legs.  Pl.'s Reply 5–6.  I am not persuaded that any of these three variables severs the connection between the first and second legs of this shipment.

As to Monga's first two arguments, though separate contracts and different contracting parties may signify that a shipper lacked the intent for his goods to be shipped by "continuous or unified movement" to a final destination outside the state of origin, it is clear that the multiple contracts and contracting parties involved here did not stem from any change to or uncertainty

7

about Monga's plans with respect to his property. Rather, the multiple contracts and contracting parties were utilized due to the involvement of Monga's employer in the shipment. But, as Monga indicates in his Complaint, he always intended his household goods to be shipped to him in Austria, and he communicated this intent to A.B.S. Compl. ¶¶ 15, 19.

As to the third argument, *Swift Textiles* indicated that "[i]t is irrelevant" to the intent-of-the-shipper analysis that "the intended consignee or its agent takes temporary custody of the goods at the port of discharge." 799 F.2d at 701. Monga contends that "it is impossible to consider a three-month storage period between activities as 'temporary.'" First, though A.B.S. ultimately stored Monga's goods for a three-month period, Monga intended the final international shipment "to be consummated within 30 days after the goods were picked up and stored at the A.B.S. Moving & Storage facility." Compl. ¶ 19. Second, courts have previously found even longer periods of storage to not render a shipment non-continuous. *See Newens v. Orna Servs., Inc.*, No. 02-1570 CRB, 2002 WL 1310734, at *1, *3 (N.D. Cal. June 10, 2002) (six months); *Tayloe v. Kachina Moving & Storage, Inc.*, 16 F. Supp. 2d 1123, 1128 n.2 (D. Ariz. 1998) (nine months); *Transp. Worldwide, Inc. v. Peavy*, No. 11-00-00082, *1–*2, 2000 WL 34234456 (Tex. App. Nov. 8, 2000) (six months).

For example, in *Tayloe*, a moving company transported a family's household goods from Arlington Heights, Illinois, to Phoenix, Arizona. 16 F. Supp. at 1125. Because the family's new home was under construction at the time of the move, the company stored the items at its Phoenix agency for nine months before final transportation to the new home. *Id.* at 1126. When the goods arrived at the final destination, mold had contaminated the items. *Id.* Similarly to Monga, the plaintiffs argued that their state-law claims were not preempted by the Carmack Amendment because their goods were stored in Arizona before final transportation to the

Phoenix home.  *Id.* at 1128.  The court held the claims preempted because "[t]he transportation and storage of Plaintiffs' goods within the State of Arizona was part of Plaintiffs' interstate move from Illinois."  *Id.*  Furthermore, the court explicitly held "the fact that Plaintiffs' goods were stored in Arizona for nine months does not change the character of the interstate move."  *Id.* at 1128 n.2.

Like the *Tayloe* plaintiffs, Monga stored his household goods in order to facilitate his relocation.  He always intended his goods to be transported to Austria, and storing them with A.B.S. only enabled the ultimate shipment abroad.  I find A.B.S.'s transportation and storage of Monga's goods was part of a continuous interstate movement of goods.  Thus, Monga's state-law claims pertaining to property damage or loss are preempted by the Carmack Amendment, and the Court has subject-matter jurisdiction over the case.  I will therefore deny Monga's Motion to Remand.

## Defendants' Motion to Dismiss

Because the Carmack Amendment preempts some of Monga's claims, Defendants move to dismiss the Complaint.  Def.'s Opp'n & Mot. 8–12.  But the Fourth Circuit has held that state-law claims completely preempted by the Carmack Amendment should not be dismissed, but rather "re-characterized as federal claims under the Carmack Amendment."  *Rush Indus., Inc. v. MWP Contractors, LLC*, 539 F. App'x 91, 95 (4th Cir. 2013) (citing *Metro. Life Ins. Co.v. Taylor*, 481 U.S. 58, 66–67 (1987); *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002)).  Accordingly, to the extent that Monga's claims are preempted, they may proceed as Carmack Amendment claims.

Additionally, some of Monga's claims are unrelated to property damage or loss.  Specifically, Counts 1–5 all seek to recover damages for excess charges that A.B.S. assessed to

Monga.  Compl. ¶¶ 46–47, 50, 61, 64–65, 69–72, 77.  Courts have held similar state-law claims unrelated to property loss or damage not preempted by the Carmack Amendment.  *Frey v. Bekins Van Lines, Inc.*, 748, F. Supp. 2d 176, 178–79, 181 (E.D.N.Y. 2010) (fraud claims for charges in excess of estimate); *Learning Links, Inc. v. United Parcel Serv. of America, Inc.*, No. 03-cv-7902, 2006 WL785274, at *1–*2, *4–*5 (S.D.N.Y. Mar. 27, 2006) (breach of contract claim for overcharges); *Sokhos v. Mayflower Transit, Inc.*, 691 F. Supp. 1578, 1581–82 (D. Md. 1988) (unfair or deceptive practices claim and intentional or negligent misrepresentation claims); *cf. Gale v. Ramar Moving Sys., Inc.*, 2013 WL 3776983 (D. Md. July 16, 2013) ("[D]amage to [Plaintiff's] home and non-shipped goods due to the alleged negligence of [Defendant's] employees is not preempted by the Carmack Amendment.").  Accordingly, insofar as Counts 1–5 seek to remedy injuries unrelated to property damage or loss, they are not preempted.

## Conclusion

In sum, because Monga's Complaint alleges property loss or damage that occurred during interstate transportation of his household goods, the Carmack Amendment completely preempts some of his claims, which means that this Court possesses subject-matter jurisdiction over the case.  Accordingly, Monga's Motion to Remand is denied.  But Fourth Circuit case law dictates that claims that are preempted by the Carmack Amendment should not be dismissed but rather re-characterized as Carmack Amendment claims.  Additionally, Counts 1–5 of the Complaint allege, in part, damages flowing from overcharges.  These claims are unrelated to property loss or damage and are therefore not preempted by the Carmack Amendment. For these reasons, Defendant's Motion to Dismiss is denied.

A separate Order follows.

Dated: <u>February 27, 2017</u>                                      _____/S/_____
                                                                    Paul W. Grimm
                                                                    United States District Judge

jlb