IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| CELESTIN MONGA, | * |
| Plaintiff, | * |
| v. | *    Case No.: PWG-16-2000 |
| A.B.S. MOVING & STORAGE, INC., *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants A.B.S. Moving & Storage, Inc., Natalie Smith, and Avi Sabban (collectively, "A.B.S.")'s Combined Motion for Reconsideration and Motion to Dismiss. Defs.' Mot., ECF No. 34. Plaintiff Celestin Monga alleges that A.B.S., a moving company, took advantage of his absence from the United States by refusing to release his household goods to an international shipper until he paid additional fees that were not disclosed in the company's estimate. Previously, I held that Monga's Complaint, which brings exclusively state-law claims, presents a federal question because the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, completely preempts some of his claims. Mem. Op. 9, ECF No. 26. In accordance with Fourth Circuit law on complete preemption, however, I held that the preempted claims should not be dismissed, but rather should proceed as if brought under the Carmack Amendment. *Id.* I also held that the aspects of Monga's claims that dealt with A.B.S.'s alleged overcharges rather than property loss or damage could proceed as originally pled. *Id.* at 10. A.B.S.'s Motion urges me to revisit the latter holding or otherwise hold the

remaining state-law claims preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 14501(c)(1). The Motion is fully briefed, Defs.' Mem., ECF No. 34-1; Pl.'s Opp'n ECF No. 35; Defs.' Reply, ECF No. 36, and no hearing is necessary, Loc. R. 105.6 (D. Md.). I do not find that my previous ruling on the Carmack Amendment's preemptive effect was clearly erroneous, so I will deny A.B.S.'s Motion to Reconsider; however I do find that Monga's remaining state-law claims—with the exception of his breach-of-contract claim—are barred by the ICCTA's preemption provision. Accordingly, I will grant A.B.S.'s Motion to Dismiss in part and deny it in part.

## Background

My previous Memorandum Opinion set forth the relevant facts:

> In November 2014, Monga accepted a position with UNIDO [the United Nations Industrial Development Organization] and began organizing his relocation to Austria. Compl. ¶ 14. The following month, Monga contacted A.B.S. to "obtain an estimate of the costs to pack and move the contents of his household . . . to an A.B.S. storage facility, to then be picked up by another carrier for shipment to Vienna, Austria." *Id.* ¶ 15. Defendant Avi Sabban, an A.B.S. employee, provided a written estimate of $1,720.00 plus a $200 monthly storage fee. *Id.* ¶¶ 16, 18. Monga intended to store the items for no more than thirty days while he arranged international shipment of the items to Austria. *Id.* ¶ 19. A.B.S. began packing and moving the items on December 15, 2014 and completed the job the next day. *Id.* ¶ 20. Shortly after the move, Monga called Sabban, attempting to secure an inventory of the items packed and loaded, and Sabban informed him that the final cost of the move had exceeded the estimate by $264.53. *See id.* ¶ 21. Monga paid the requested amount. *Id.* ¶ 25. On January 15, 2015, A.B.S. requested an additional $2,887.50, which another A.B.S. employee, Defendant Natalie Smith, later explained included a previously undisclosed "pickup fee of $1987.50 plus $900.00 for storage" that the company would require Monga to pay before she would "discuss . . . whom you would like to have your household items released to." *Id.* ¶¶ 26, 29 (quoting Email from Natalie Smith, to Celestin Monga (Jan. 22, 2015, 7:55 P.M.), Compl. Ex. 4, ECF No. 2-4). Around the same time, Monga hired Allied International ("Allied") to retrieve the household goods from A.B.S. and ship them to Austria. *Id.* ¶ 33. An Allied representative contacted A.B.S., which indicated that it would not release Monga's belongings for international shipment until it received the additional $2,877.50 and a notarized letter authorizing the release. *Id.* ¶¶ 33–34. When Allied sought confirmation of these details on Monga's behalf, A.B.S. requested

2

> an additional $140.00 loading fee. *Id.* ¶ 36. Monga paid the additional $2,887.50 on February 12, 2015. *Id.* ¶ 32. After additional difficulties securing release of the items, Allied successfully obtained Monga's belongings on March 3, 2015 and documented lost and damaged items. *Id.* ¶¶ 39–40.

Mem. Op. 3–4.

## Standard of Review

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Although the Fourth Circuit has not articulated a standard for reviewing such motions, *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991), the standards for reviewing Rule 59(e) and 60(b) motions provide guidance for the review of a Rule 54(b) motion, *see Cezair v. JPMorgan Chase Bank, N.A.*, No. DKC 13-2928, 2014 WL 4955535, at *1 (D. Md. Sept. 30, 2014). Rule 59(e) permits reconsideration on the basis of, among other things, "a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  With respect to claims that allege fraud, "a party must state with particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  Fraud allegations that meet these heightened pleading requirements "typically 'include the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.' " *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313–14 (D. Md. 2000)).

## Discussion

### Carmack Amendment Preemption

The Carmack Amendment provides a federal cause of action to recover damages from motor carriers for "actual loss or injury to . . . property" during interstate transportation.  49 U.S.C. § 14706(a)(1).[1]  The Constitution's Supremacy Clause declares federal law "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary

---

[1] In my previous opinion, I held that A.B.S.'s transportation of Monga's household goods within Maryland state lines amounted to interstate transportation for Carmack Amendment purposes because "Monga intended all along for his household goods to be shipped to him in Austria." Mem. Op. 7; *see also Bongam Inv. Corp. v. Pioneer Shipping Logistics, Inc.*, No. CCB-09-965, 2009 WL 1766782, at *2 (D. Md. June 9, 2009) ("If the court finds that the intention formed prior to shipment was for the goods to be carried by a continuous unified movement to final destination beyond the port of discharge, then the Carmack Amendment may apply to the intrastate portion of the shipment.").

notwithstanding." U.S. Const. art. VI, cl. 2. "As a result, federal statutes and regulations properly enacted and promulgated 'can nullify conflicting state or local actions.' " *Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588, 595 (4th Cir. 2005) (quoting *Nat'l Home Equity Mortg. Ass'n v. Face*, 239 F.3d 633, 637 (4th Cir. 2001)). Preemption takes three forms: (1) "express preemption," where "Congress has clearly expressed an intention" to nullify state law; (2) "complete" or "field preemption," where Congress "by legislating comprehensively" expresses a clear intention to "occupy an entire field of regulation"; and (3) "conflict preemption," where "state law conflicts with federal law." *Id.* at 596. The Supreme Court has held that Congress intended the Carmack Amendment to completely preempt overlapping state law. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913).

But the Carmack Amendment's preemptive reach depends on its regulatory scope. A.B.S. argues that the provision preempts all "ancillary causes of action related to the transportation contract and the failure in the duty of the carrier to deliver goods and not necessarily related to loss and damage to those goods." Defs.' Mem. 9. Monga takes the position that the Carmack Amendment regulates precisely what it says it regulates—"actual loss or injury to . . . property." Pl.'s Opp'n 6–7 ("If Congress intended for the Carmack Amendment to limit all carrier liability in a transaction, it would be written in the statute."); 49 U.S.C. § 14706(a)(1). And that impulse informed my previous ruling. Upon closer examination of the issue, and with the benefit of more fulsome briefing with regard to the Carmack Amendment's application to Monga's remaining state law claims, I now see that while there is considerable disagreement and even confusion regarding whether the Carmack Amendment's preclusive effect extends beyond claims related to the loss, damage, or delayed delivery of household goods, some courts have indeed treated the Carmack Amendment as regulating far more than its

text suggests. Even so, it is still not clear to me that it bars plaintiffs from bringing state-law contract claims that related to overcharges and unrelated to any loss, damage, or delay in delivery of the shipped property.

In the early days of the Carmack Amendment, the Supreme Court held that the statute encompasses "[a]lmost every detail" of "the subject of the liability of the carrier under a bill of lading." *Adams Express*, 226 U.S. at 505. And the Court has specifically held that the law preempts state-law claims for damages caused by delayed delivery, even though the statute is silent on that issue. *See Se. Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29–30 (1936) (per curiam). Similarly, the Court has held that the provision bars common-law conversion claims. *American Ry. Express Co. v. Levee*, 263 U.S. 19, 21 (1923).

Relying on *Adams Express*'s broad language, some courts, including this one, have held or suggested in dicta that the Carmack Amendment preempts an even wider array of claims. In its Motion, A.B.S. quotes at length from *Richter v. North American Van Lines, Inc.*, 110 F. Supp. 2d 406 (D. Md. 2000). Defs.' Mot. 5–6. In that case, Judge Peter Messitte held that "virtually every kind of state cause of action *relating to* the contract of shipment . . . is preempted" by the Carmack Amendment and that only state claims that "have *nothing at all* to do with the transportation of goods" fall outside the preemptive scope. *Richter*, 110 F. Supp. 2d at 411 (emphasis added). Thus, for example, a tort claim against a moving company's employee who assaults a customer would not be barred under this rule, as assault has nothing to do with a shipping contract. *Id.* But *Richter*'s broad language was dicta because the case addressed claims for damages caused by delayed delivery, *id.* at 410, an issue resolved by *Pastime Amusement*'s holding that the Carmack Amendment encompasses claims relating to delays, 299 U.S. at 29–30.

*Richter* does not, therefore, offer clear guidance on whether or not Monga's remaining claims are preempted, and, in any event, it is not binding authority.

More recently, other courts have directly addressed the issue of overcharge claims. As I noted in my previous opinion, Mem. Op. 10, some courts have found that such claims are not preempted by the Carmack Amendment, *Frey v. Bekins Van Lines, Inc.*, 748 F. Supp. 2d 176, 178–79, 181 (E.D.N.Y. 2010); *Learning Links, Inc. v. United Parcel Serv. of Am., Inc.*, No. 03-cv-7902, 2006 WL 785274, at *1–*2, *4–*5 (S.D.N.Y. Mar. 27, 2006). But, as A.B.S. points out, Defs.' Mem. 7–9, lower courts do not unanimously take that position. In *Hall v. North American Van Lines, Inc.*, 476 F.3d 683, 685–86 (9th Cir. 2007), a plaintiff brought breach-of-contract, fraud, and conversion claims arising out of a shipping company's refusal to release her goods until she paid an extra $13,312 (a situation similar to Monga's allegations in this case). The court rejected the plaintiff's argument that the Carmack Amendment did not preempt her claims because they did not relate to property loss or damage, holding that the statute "completely preempts a contract claim alleging the late delivery of goods, even without loss or property damage." *Id.* at 688. The court further held that the conversion and fraud claims were barred on account of conflict preemption. *See id.* at 689–90 & n.8. And in a decision that predated *Hall*, the Northern District of California held that the Carmack Amendment did not preempt claims arising out of similar bait-and-switch tactics, *Roberts v. N. Am. Van Lines, Inc.*, 394 F. Supp. 2d 1174, 1182 (N.D. Cal. 2004), but that they were nevertheless barred on field-preemption grounds because of Congress's "pervasive[]" regulation of "every aspect of the arrangements made for interstate transportation of household goods," *id.* The court specifically cited Congress's delegation of "plenary authority" to the Department of Transportation "to issue regulations governing interstate transportation of household goods" and the agency's

7

promulgation of rules governing overcharges as evidence of broader field preemption than the Carmack Amendment alone provides. *Id.* at 1183–84 (citing 49 U.S.C. § 14104(a)).[2]

I suspect that much of the confusion surrounding the Carmack Amendment stems from its enactment during an era when a different (more expansive) approach to statutory interpretation held sway. If permitted to interpret the statute on a clean slate, I would be inclined to take an approach more rooted in the statute's text, as Monga advocates. But the Northern District of California's analysis in *Roberts* also persuades me that discussion of Congress's preemptive intent when it comes to interstate transportation of household goods is too myopically focused on the Carmack Amendment alone rather than the broader regulatory framework that applies to the subject matter. Indeed, this narrow focus on the Carmack Amendment seems more evocative of an express- or conflict-preemption rather than the field-preemption analysis that the provision supposedly triggers. Congress's pervasive regulation of interstate transportation of household goods may preempt claims like Monga's even if they fall outside the Carmack Amendment's regulatory scope. But because A.B.S. has not argued that Congress's broader regulation of interstate transportation of household goods (either directly or via delegated authority) preempts Monga's remaining claims and because I do not find that my previous interpretation of the Carmack Amendment's regulatory scope was clearly erroneous, I will deny A.B.S.'s Motion for Reconsideration.

### ICCTA Preemption

A.B.S. alternatively argues that the ICCTA's preemption clause bars Monga's remaining state-law claims. Defs.' Mem. 11–13. The ICCTA's preemption provision nullifies "state

---

[2] Monga misleadingly cites this case for the proposition that the Carmack Amendment does not preempt claims related to bait-and-switch conduct but fails to disclose that the court ultimately found the claims barred due to Congress's broader occupation of the regulatory field of interstate transportation of household goods. Pl.'s Opp'n 10.

8

law[ or] regulation . . . related to a *price*, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1) (emphasis added). The provision contains a specific carveout for "intrastate transportation of household goods." *Id.* § 14501(c)(2)(B). Monga argues that the ICCTA does not preempt his claims because A.B.S. only shipped his household goods within Maryland state lines. Pl.'s Opp'n 8. But I have already determined that the shipment was an interstate one for Carmack Amendment purposes, Mem. Op. 7, and Monga cites no authority supporting a different definition of interstate transportation in the ICCTA context. And my own review has not uncovered any authority suggesting a different definition governs. Monga also argues that his claims do not relate to price because they "have nothing to do with the price originally contracted to." Pl.'s Opp'n 9. The ICCTA's preemption clause closely resembles a similar provision in the Airline Deregulation Act of 1978, 49 U.S.C. § 4713(b)(4)(A), (B)(i). In discussing the analogous preemption provision, the Supreme Court defined "relating to" as "having a connection with or reference to." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Overcharge claims are clearly connected to the price charged by a motor carrier, as is an allegation of bait-and-switch tactics connected to the service provided by the carrier. The nub of Monga's overcharge claims is that the price A.B.S. charged exceeded what the company represented and contracted to. This Court previously held that the ICCTA's preemption provision barred misrepresentation, negligent misrepresentation, and unjust enrichment claims against a shipper that "orally agreed to a price for its service, but later charged . . . more than the allegedly agreed upon price." *Mastercraft Interiors, Ltd. v. ABF Freight Sys., Inc.*, 284 F. Supp. 2d 284, 288 (D. Md. 2003); *accord Frey v. Bekins Van Lines, Inc.*, 802 F. Supp. 2d 438, 441–42 (E.D.N.Y. 2011); *Data Mfg., Inc. v. United Parcel Serv., Inc.*, No. 4:07-CV-1456 (CEJ), 2008 WL 648483, at *4 (E.D. Mo. Mar. 5, 2008), *aff'd in relevant part*, 557 F.3d 849, 852–53 (8th

Cir. 2009). For the same reason, most of Monga's remaining state-law claims are preempted. But unlike the Carmack Amendment, which completely preempts state-law claims related to loss, damage, and delayed delivery of household goods, *Pastime Amusement Co.*, 299 U.S. at 29–30; *Adams Express*, 226 U.S. at 505–06, the ICCTA expressly preempts state law claims. *Mitsui O.S.K. Lines, Ltd. v. Evans Delivery Co., Inc.*, 948 F. Supp. 2d 406, 413 (D.N.J. 2013) ("While [the ICCTA's preemption] provision may serve as the basis for a defense of express federal preemption against [the Plaintiff's] state law claims, it has no bearing on the issue of complete preemption, which requires an exclusively federal cause of action."). Although completely preempted claims must be recharacterized as their federal analogs, directly preempted claims must be dismissed. *Compare Mastercraft Interiors*, 284 F. Supp. 2d at 288 (dismissing claims preempted by ICCTA), *with Rush Indus., Inc. v. MWP Contractors, LLC*, 539 F. App'x 91, 95 (4th Cir. 2013) (recharacterizing as Carmack Amendment claims state-law claims preempted by the provision). Thus, with one exception, Monga's remaining state-law claims related to overcharges must be dismissed.

The ICCTA does not preempt Monga's breach-of-contract claim (Count 3).[3] In *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), plaintiffs brought consumer-fraud and breach-of-contract claims in order to prevent retroactive application of a change to American Airlines' frequent flyer program to their existing credit mileage, *id.* at 225. The Court held that the Airline Deregulation Act preempted the fraud claims, *id.* at 228, but that the contract claims could proceed because "terms and conditions airlines offer and passengers accept are privately

---

[3] Monga's breach-of-contract claim largely addresses the alleged overcharges. Compl. ¶ 61 ("A.B.S. Moving & Storage added charges that were not agreed to, which increased Mr. Monga's out of pocket costs to over $4,000."). He also alleges that A.B.S. breached the contract by "not fully complet[ing] the services as promised, which includes omitting to pack items that have now been presumed as lost and/or stolen . . . ." *Id.* ¶ 62. I have already recharacterized that aspect of his breach-of-contract claim as a Carmack Amendment claim. Mem. Op. 9.

ordered obligations" and thus do not implicate state law. *Id.* at 228–29. Based on *Wolens*, the Fourth Circuit held that the ICCTA also does not preempt "routine breach of contract case[s]." *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296 (4th Cir. 2013). And in the context of alleged overcharges by a motor carrier, the Eighth Circuit has held specifically that while the ICCTA does preempt fraudulent and negligent misrepresentation claims, *Data Mfg.*, 557 F.3d at 853, it does not preempt "four-corners [contract] claim[s] solely between the parties that does not derive from the enactment or enforcement of state law," *id.* at 854. Monga's breach-of-contract claim—at least as it pertains to the alleged overcharges—is a matter of routine contract interpretation and does not rely on enforcement of state law. It only requires the Court to determine whether Monga agreed to the fees that A.B.S. ultimately charged him. Accordingly, the breach-of-contract claim is not preempted by the ICCTA.

## Conclusion

After additional consideration of the Carmack Amendment's preemptive scope, I find that I did not commit clear error by holding Monga's state-law claims pertaining to alleged overcharges not preempted by that statute. Although the Supreme Court has characterized the statutory provision in broader terms than its text suggests, it has not provided clear guidance on the provision's outer limits, and lower-court authority on the topic is divided. Under the circumstances, there is no basis for revisiting my initial determination that the provision does not bar Monga's remaining state-law claims. On the other hand, the ICCTA's preemption provision does bar Monga's remaining state claims, with the exception of his breach-of-contract claim, and must be dismissed. But because his breach-of-contract claim depends on an interpretation of what he and A.B.S. agreed to between themselves rather than on enforcement of state law, it may proceed.

## **ORDER**

Accordingly, for the reasons stated, it is this 31st day of July, 2017, hereby ORDERED that Defendant A.B.S.'s Combined Motion for Reconsideration and Motion to Dismiss, ECF No. 34, is GRANTED in part AND DENIED in part as follows:

1. A.B.S.'s Motion for Reconsideration IS DENIED;

2. As I previously ruled, Monga's claims related to loss, damage or delayed delivery of household goods may proceed as Carmack Amendment claims;

3. A.B.S.'S Motion to Dismiss IS GRANTED as to the aspects of Counts 1–2 and 4–7 related to overcharges allegedly assessed by A.B.S, which ARE DISMISSED;

4. A.B.S.'s Motion to Dismiss IS DENIED as to Count 3 insofar as it relates to overcharges allegedly assessed by A.B.S;

5. Monga may only pursue his claims related to overcharges through the remaining breach-of-contract claim (Count 3).

/S/
Paul W. Grimm
United States District Judge

jlb